IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HECTOR PARADA,

          Plaintiff,

v.

                                  Case No. 19-CR-00056-SPM

WEXFORD HEALTH SOURCES,
INC. et al.,

          Defendants.

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

      Pending before this Court is Defendants Arnel Garcia, Venerio Santos, and Wexford Health Sources, Inc.'s ("Defendants") Motion for Summary Judgment on the Merits (Doc. 105). The matter is fully briefed, and for the reasons set forth below, the Motion for Summary Judgment on the Merits (Doc. 105) is GRANTED in part and DENIED in part.

## BACKGROUND

      Plaintiff Hector Parada, an inmate in the Illinois Department of Corrections ("IDOC"), filed this action pro se under 42 U.S.C. § 1983 for alleged deprivation of his constitutional rights that occurred while incarcerated at Centralia Correctional Center ("Centralia") (Doc. 1). Parada moved this Court to appoint counsel (Doc. 3) which this Court granted (Doc. 8). Parada subsequently filed an amended complaint (Doc. 43). Parada alleged that he was issued a standard prison jumpsuit at Western Correctional Center ("Western") that was dirty and moldy in October of 2009. *Id.* That

shortly after he received the jumpsuit, he developed a painful and itchy rash and that as the rash spread, he began to experience a litany of symptoms including "headaches, shooting pain in his lower back, chronic stomach pain, nausea, elevations of his body temperature, and swelling of his abdomen." *Id.* Parada further alleged that from 2009 until his transfer to Centralia in 2016 he saw various medical professionals at Western who recommended and prescribed various ineffective treatments. *Id.* Finally, Parada alleged that Drs. Garcia and Santos continued the ineffective treatments during his time at Centralia without properly diagnosing his condition and adjusting treatment. *Id.* Currently, Parada is proceeding with the following claims:

**Count 1:** Eighth Amendment claim against Dr. Venerio Santos and Dr. Arnel Garcia for deliberate indifference to Mr. Parada's Medical Condition (a rash and associated medical conditions/symptoms).

**Count 2:** Eighth Amendment claim against Wexford Health Sources, Inc. for deliberate indifference via a Policy or Practice (incentivizing doctors to undertreat inmates).

## RELEVANT FACTS

Parada is an inmate in IDOC who was housed in Western from October 2009 to May 2016, Centralia from May 2016 to March 2019, and Lincoln Correctional Center from March 2019 to present. (Doc. 43, pp. 2-4). In 2009, while housed at Western, Parada developed a skin rash. (Doc. 106-2, pp. 8-10). Parada described the rash as painful and itchy and claimed that it will subside and then reappear later. (Doc. 106-2, pp. 8-17). Parada detailed that during his seven years at Western he saw

medical professionals who proscribed creams and antihistamines and that such treatments were ineffective. (Doc. 106-2, pp. 8-9).

On May 13, 2016, Dr. Butler, at Western, took a punch biopsy of Parada's rash from his forearm. (Doc. 106-1, p. 135). Dr. Goth of the University of Illinois Department of Pathology prepared the surgical pathology report, in which he commented that:

> Additionally given the changes on special studies of rare (2 microns approximately) spheroid structures within the dermis which are somewhat highlighted by PAS, a fungal process within the dermis cannot be entirely excluded. An attempt to further characterize these structures is limited as they are lost with deeper sectioning. Therefore an additional sample may be helpful to further characterize the disease process in this patient, with a portion sent for bacterial and fungal cultures. Additional urine and serologic studies for fungal organisms, particularly Histoplasmosis may be helpful. Therefore please correlate clinically and with microbiological studies.

*Id.* Further, Dr. Goth noted Parada's clinical history relevant to the biopsy as "[g]eneralized rash mostly macular pruritic unresponsive to steroids and antifungal agents, present for 9-10 years." *Id.*

Between Parada's transfer to Centralia and January 2017, he visited medical staff at Centralia, including Drs. Garcia and Santos, on numerous occasions. (*See generally* Doc 106-1). Although the medical records are handwritten and largely illegible, it is uncontested that at least some of such visits were about Parada's skin. (Doc. 106, pp. 7-11). On January 12, 2017, Parada saw Dr. Santos who wrote "histoplasmosis?" in his notes for the visit and prescribed Itraconazole. (Doc. 106-1, p. 34; Doc. 106-3, pp. 66-67).

Between January 12, 2017, and July 14, 2018, Parada once again saw medical staff at Centralia, including Drs. Garcia and Santos, on numerous occasions complaining of symptoms that Parada attributed to his rash and related condition. (Doc. 106-1, pp. 98-170). On July 15, 2018, Parada saw a nurse and complained of a rash and that hydrocortisone cream was ineffective as treatment, he was referred to see a doctor. (Doc. 106-1, p. 101). On July 18, 2018. Parada saw Dr. Garcia for the rash and he was prescribes an anti-inflammatory oral steroid and Benadryl. (Doc. 106-1, p. 103; Doc. 106-4, pp. 43-44, 53-54). On July 23, 2018, Parada once again saw Dr. Santos for a rash and was prescribed another antifungal medication and was directed to wash with Selsum Shampoo. (Doc. 106-1, p. 107).

Parada continued seeing medical staff between July 23, 2018, and September 25, 2018. (Doc. 106-1, pp. 109-14). On September 26, 2018, Parada saw Dr. Garcia and was diagnosed with a rash and leg spasms, Dr. Garcia's treatment plan was more creams and sprays. (Doc. 106-1, p. 115). On December 12, 2018, Parada saw a nurse for skin issues, he was referred to a physician. (Doc. 106-1, p 120). Parada saw a doctor on December 15, 2018, and was prescribed even more antihistamines and hydrocortisone cream. (Doc. 106-1, p. 121). Throughout the entire time outlined above, no further testing of Parada's condition was ordered, as Dr. Goth had recommended. (Doc. 106-1, p. 135). Further, the medical records had, as of July 13, 2016, explicitly noted that the course of treatment subsequently chosen by Drs. Garcia and Santos

was ineffective. (Doc. 106-1, p. 135).

LEGAL STANDARDS

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## II. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and

deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id. Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health.

*Id.* at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton*, 593 F.3d at 620).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant[ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). Additionally, a medical professional's choice of an easier, less efficacious treatment can also rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441.

# ANALYSIS

## I. Count I – Deliberate Indifference by Drs. Santos and Garcia

In the Amended Complaint, Parada claims that his medical condition was objectively sufficiently serious because it caused him pain, discomfort, and suffering and that Drs. Garcia and Santos were deliberately indifferent to his condition for continuing a course of treatment known to be ineffective. (Doc. 43, p. 7). To maintain a claim against Drs. Garcia and Santos, Parada must show that he had "an objectively serious medical condition" and the doctors' "deliberate indifference to that condition." *Arnett*, 658 F.3d at 750 (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

In its Motion for Summary Judgment on the Merits, Wexford argued that Parada does not have an objectively serious medical condition because he has not been diagnosed with histoplasmosis and a litany of other types of rashes and fungal infections have been found not objectively serious. (Doc. 106, pp. 20-26). However, "[a] medical condition is objectively serious if a physician has diagnosed it as requiring treatment." *Hammond*, 123 F. Supp. 3d at 1084 (quoting *Pyles*, 771 F.3d at 409). Further, "complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life-threatening and the failure to treat does not exacerbate the condition." *Burt v. Nwaobasi*, No. 3:13-CV-794, 2017 WL 4083578, at *6 (S.D. Ill. Sept. 14, 2017) (quoting *Diaz v. Godinez*, 693 F. App'x 440, 443 (7th Cir. 2017)). Parada was clearly diagnosed with a rash that required treatment as is evidenced by the medical records showing multiple creams, steroids, and antihistamines prescribed to him to treat the rash. Additionally, Parada's medical

records, his complaint, and his testimony described the rash as painful. Thus, Parada has established a material issue of fact as to whether the condition was objectively serious.

In its Motion for Summary Judgment on the Merits, Wexford argued that Dr. Santos was not deliberately indifferent to Parada's medical condition because he prescribed an antifungal medication and a different topical cream during treatment of Parada. (Doc. 106, p. 28). Persisting "in a course of treatment known to be ineffective" has been "recognized as a violation of the Eighth Amendment." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). The medical records dating back to before Dr. Santos assumed Parada's care stated that the rash was "unresponsive to steroids and antifungal agents." (Doc. 106-1, p. 136). Thus, whether simply changing the type of antifungal or steroid prescribed to Parada is enough to avoid deliberate indifference is a question of fact about which reasonable jurors could disagree.

Wexford argues that Dr. Garcia was not deliberately indifferent to Parada's medical condition because Dr. Garcia only saw Parada for his rash twice, and one of the two times Parada wanted care for abdominal pain rather than the rash. (Doc. 106, pp. 28-29). To support this argument Wexford relies on Dr. Garcia's testimony while admitting that the medical records indicate the visit was scheduled for Parada's rash. (Doc. 106, p. 28). It is the duty of the fact finder to weigh conflicting evidence. *See Ramsey v. United Mine Workers of America*, 401 U.S. 302, n.6 (1971). Thus, Wexford in its Motion for Summary Judgment on the Merits has demonstrated that there is an issue of fact regarding Dr. Garcia.

Additionally, the Court will note that it has been recognized that a jury could find deliberate indifference from a medical provider's refusal over a multiple year span to refer an inmate to a specialist or for diagnostic testing. *See Greeno*, 414 F.3d at 655. Medical providers cannot simply claim there is no objective evidence of a serious medical condition when they prevented a prisoner from obtaining such evidence. *Id.*

## II. Count II – Deliberate Indifference by Wexford Health Sources, Inc.

In the Amended Complaint, Parada claims that Wexford maintained a custom, policy, or practice of providing monetary incentives to its employees to undertreat prisoners in order to reduce costs. (Doc. 43, p. 8-9). To maintain a claim against Wexford, Parada must show that any violation of his constitutional rights was caused by "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)).

In its Motion for Summary Judgment on the Merits, Wexford argued that no claim against Wexford can survive because there is no underlying constitutional violation. (Doc. 106, pp. 32-34). However, for the reasons outlined above this Court finds that whether or not there is an underlying constitutional violation is a question of fact to be left to the jury. Therefore, this argument is not persuasive.

Wexford further argued that there is no evidence of the existence of a policy

that incentivized providers to undertreat inmate patients. (Doc. 106, pp. 34-35). The Court agrees that Parada has not provided sufficient evidence to create a question of fact. Parada relies on his own testimony that "it is common knowledge among Centralia's employees and inmates that Dr. Santos and Dr. Garcia routinely fail to adequately and properly diagnose patients because of the costs associated with offsite referrals" and Wexford's use of a "utilization management/collegial review process." (Doc. 107, p. 12-13). However, neither Parada's own testimony nor Wexford's collegial review process suffice as evidence upon which a reasonable jury could rely to find in favor of Parada on his *Monell* claim. The Seventh Circuit has recognized that "[p]laintiffs cannot idly rest on [] conclusory allegations . . . at this stage of the game." *Harvey v. Town of Merrillville*, 649 F.3d 526, 531-32 (7th Cir. 2011). The Seventh Circuit has also recognized that Wexford's "collegial review process is not unconstitutional on its face." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021). Thus, Parada has not sufficiently presented an issue of fact to be left to the jury.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment on the Merits filed by Defendants (Doc. 105) is **GRANTED** as to Count II and **DENIED** as to Count I.

**IT IS SO ORDERED.**

**DATED:   June 9, 2023**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**